# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**CHRISTOPHER S. STRECKENBACH,**

    Plaintiff,

    -vs-                                          Case No. 15-CV-451

**CHARLES VAN DENSEN,**

    Defendant.

## DECISION AND ORDER

On April 16, 2015, plaintiff Christopher S. Streckenbach, who is representing himself, filed a civil rights complaint pursuant to 42 U.S.C. § 1983. (ECF No. 1.) The Court screened the plaintiff's complaint pursuant to 28 U.S.C §1915A(a) and allowed him to proceed with his claim that the defendant violated his Fourteenth Amendment rights when he destroyed the plaintiff's property. (ECF No. 10.) This matter is before the Court on the parties' cross-motions for summary judgment (ECF Nos. 36, 39), which were fully briefed as of March 9, 2016. For the reasons stated in this decision, the Court grants the defendant's motion for summary judgment and denies the plaintiff's motion for summary judgment.

## I. RELEVANT FACTS[1]

The plaintiff is a Wisconsin state inmate, currently incarcerated at Redgranite Correctional Institution (Redgranite), a medium security prison. (ECF No. 49 ¶ 1.) At the relevant times, defendant Charles VanDensen was employed at Redgranite as the Mail and Property Sergeant. (*Id.* ¶ 2.) In that role, the defendant's responsibility was to supervise the mail and property department, which was responsible for the daily monitoring, delivering, and disposing of the inmates' mail and property in accordance with the Wisconsin Administrative Code and Redgranite's policies and procedures. (*Id.* ¶ 3.)

On November 25, 2014, the plaintiff filled out a form DOC-237, indicating that he would like specified property items to be disposed[2] of (i.e., sent out) through a visit. (*Id.* ¶¶ 28, 29.) On the form, the plaintiff elected to ship his property via UPS, if the property could not be disposed of through a visit. (*Id.* ¶ 31.) The defendant was not present when the plaintiff filled out the form. (*Id.* ¶ 32.)

---

[1] The facts in this section are primarily taken from the Defendant's Reply to Plaintiff's Response to Defendant's Proposed Findings of Fact. (ECF No. 49.) The facts are undisputed unless otherwise noted by the Court.

[2] The plaintiff disputes many of the defendant's proposed statements of fact based on the use of the word "disposal." The defendant clarifies that the word "disposal" does not necessarily mean disposal by destruction; it could also mean disposal through a visit or by mailing out via a commercial carrier.

- 2 -

The plaintiff's property was not picked up from the visiting room within thirty days, so, per policy, it was sent back to the mail and property department for alternative disposal. (*Id.* ¶ 33.) On December 29, 2014, the defendant used UPS's computer program to calculate the cost to ship the plaintiff's property via UPS. (*Id.* ¶ 34.) The cost was $9.27. (*Id.*) The plaintiff's institution account balance was $6.88. (*Id.* ¶ 35.)

According to the defendant, the then-current policy, which had been updated more than a year earlier in September 2013, required that he destroy the property, so he did. (*Id.* ¶ 36.) Specifically, policy 900.410.04 allows a prisoner to dispose of property through a visitor. (ECF No. 42-1.) However, at the time the prisoner makes the request, he must also designate a second disposal option in the event a visit does not occur within thirty days of the request. (*Id.*) As a second disposal option, a prisoner may elect to destroy the property or ship the property via a designated commercial carrier. (*Id.*) The policy cautions, more than once:

> It is the inmate's responsibility to ensure sufficient funds are available in his regular account to cover the cost of shipping.
>
> If insufficient funds are not available in an inmate's regular account when property is returned from the visiting room; the property will be destroyed.

(*Id.*)

- 3 -

Case 2:15-cv-00451-RTR   Filed 03/21/16   Page 3 of 10   Document 52

The plaintiff disagrees that this was the policy in place at the time he made his request. He states that the first time he ever saw the policy relied upon by the defendant was when the defendant filed his proposed statement of facts in support of his motion for summary judgment.[3] (ECF No. 49 ¶ 25). According to the plaintiff, at that time, the policy available in the library (которое is where he and other inmates could access institution policies), stated:

> Property items that remain in the [visiting room's] secured cabinet for a period of more than 30 days will be returned to the Property Department. The inmate will be summoned to the Property Department to choose an alternative way of disposing of these items.

(ECF No. 42-3 ¶ I(G).)

On December 30, 2014, in response to an inquiry from the plaintiff, the defendant returned the property receipt/disposition form to the plaintiff. (ECF No. 49 ¶ 37.) The receipt indicated that the plaintiff's property had been destroyed because the plaintiff had lacked sufficient funds in his account to ship the property as requested. (*Id.*)

---

[3] Although the plaintiff claims he only recently learned of this revised policy, the plaintiff attached an ICE report dated February 20, 2015 (ECF No. 1-8), to his complaint. The report quoted the relevant portions of the revised policy in support of the decision to dismiss the plaintiff's inmate complaint. Thus, it appears that the plaintiff was on notice as of February 2015 that a revised policy existed.

- 4 -

The plaintiff argues that the defendant violated his right to due process when he destroyed the plaintiff's property without first contacting him.

## II.    SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce

- 5 -

admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## III. ANALYSIS

The plaintiff's argument is that the outdated policy he had access to required the defendant to consult with him about the plaintiff's disposal preferences in the event his property was not disposed of through a visit within thirty days. The problem with this argument is that the policy the plaintiff alleges he had access to was not the current policy. The current policy, which the defendant followed, notified inmates that property would be returned to the property room after thirty days and that it would be destroyed if an inmate's account had insufficient funds to cover shipping costs.

The plaintiff argues in his response to the defendant's motion that even if the defendant was following the current policy, he is still liable because the defendant failed to update the policies available to the inmates or failed to confirm that the plaintiff was aware of the revised policy. However, the plaintiff does not raise these theories of liability in

his complaint, and a plaintiff cannot raise a new theory in the course of briefing summary judgment. See, e.g., *Insolia v. Philip Morris, Inc.*, 216 F.3d 569, 606-07 (7th Cir. 2000); *Silverman v. Motorola*, 772 F.Supp.2d 923, 936 (N.D. Ill. 2011). As such, the Court will not consider these new theories of liability.

The only question properly before the Court is whether the defendant violated the plaintiff's constitutional rights when he followed the institution's policy and destroyed the plaintiff's property without further notice to the plaintiff. The Court concludes the defendant did not violate a clearly established constitutional right, so he is entitled to qualified immunity.

Qualified immunity protects government officials from facing suits for damages when their actions do not violate clearly established constitutional or statutory rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To be clearly established, a right "must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 132 S.Ct. 2088, 2093 (2012) (internal quotations omitted). The inquiry focuses on the specific circumstances that confronted the official and whether the official acted

reasonably under settled law in those circumstances. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

Here, the Court must consider whether the defendant would have understood that he was violating the plaintiff's right to due process when he followed a policy that required him to destroy the plaintiff's property without consulting the plaintiff after he learned that the plaintiff's account contained insufficient funds to ship the property as the plaintiff had instructed.

The Due Process Clause of the Fourteenth Amendment prohibits state officials from "depriving any person of property without due process of law. From these cryptic and abstract words, [the United States Supreme Court has] determined that individuals whose property interests are at stake are entitled to notice and an opportunity to be heard." *Dusenbery v. U.S.*, 535 U.S. 161, 167 (2002). That said, "[T]he fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Thus, in the prison setting, all that is generally required is notice of the policy and an adequate opportunity to comply. See *Nevada Dept. of*

*Corrections v. Greene*, 648 F.3d 1014, 1019 (9th Cir. 2011); *Schrubb v. Tilton*, Case No. 14-16823, 2016 WL 360838, at *1 (9th Cir. Jan. 27, 2016).

The policy the defendant followed had been in place for more than one year when the plaintiff filled out his property disposal form. It clearly notifies inmates in three separate places that, "In the event that an inmate has chosen to send property out as his second disposal option and there is insufficient funds available in his regular account to cover shipping costs, property will be destroyed." (ECF No. 42-1 ¶ I(K)(1).) The property is allowed to remain on hold pending disposal through a visit for up to thirty days. Thus, an inmate has thirty days to either ensure there is adequate money in his account to ship the property or to withdraw the property from the property room prior to the property being destroyed. In short, the policy satisfies the requirements of the Due Process Clause because it provides the inmates notice and an adequate opportunity to comply.

Because the defendant did not violate a clearly established constitutional right when he followed the institution's policy requiring him to destroy the plaintiff's property, the defendant is entitled to summary judgment on the ground of qualified immunity.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT** the plaintiff's motion for summary judgment (ECF No. 36) is **DENIED**

**IT IS ALSO ORDERED THAT** the defendant's motion for summary judgment (ECF No. 39) is **GRANTED**.

Dated at Milwaukee, Wisconsin, this 21st day of March, 2016.

                                                  **BY THE COURT:**

                                                  */s/ Rudolph T. Randa*
                                                  **HON. RUDOLPH T. RANDA**
                                                  **U.S. District Judge**